The next case, number 21-1813, United States v. Michael Balser. At this time, we would ask the Appellant's Counsel, Attorney Rancourt, to please introduce herself on the record to begin. Thank you. May it please the Court, my name is Jay Rancourt and I represent Michael Balser. Mr. Balser filed a motion to suppress in the trial court based on lack of probable cause for the stop of his vehicle and subsequent search. The court ultimately found PC, probable cause, based on the collective knowledge doctrine. Finding that the officer who stopped and searched the car did not have probable cause, but that the DEA task force that alerted this in other cases where this court has found the collective knowledge doctrine to apply is found at the trial court's order, page 4 of 17 of document 39. The trial court specifically found, and I'm quoting, Turner asked DiChiara, Turner being the DEA task force officer, DiChiara being the stopping officer, to find a motor vehicle violation before stopping the car and told him to conduct a walled-off stop, noting that DiChiara should try and develop his own probable cause to search or seek a search warrant. Turner asked for a walled-off stop because he did not want DiChiara to reveal information about the ongoing DEA investigation. That is a distinguishing factor of this case from other collective knowledge cases. And that's because it was not a clear directive from the DEA task force to stop this motor vehicle. And it was not a clear directive from the DEA task force on which Officer DiChiara could rely to assume that they had established probable cause. Counsel, the stopping officer was aware of the DEA investigation because he had worked with Officer Turner before and Turner had told him about it. And he was aware that this latest information was part of that investigation. Specifically, could you tell us what he was made the stop? It is a bit unclear of what the previous conversations had been. Officer DiChiara testified at the hearing that Officer Turner... The district court accepted Officer Turner as credible. What was Turner's testimony? Turner's testimony was that he had previously discussed the wire, the ongoing wire that the DEA had on that house in Lawrence that they were kind of sitting on. But specifically, what information about that wire, he did not say. He just said they had had previous conversations, is my recollection. And then on that day, Turner testified... Didn't he also testify that he had told him he was involved in a DEA drug investigation? Yes, I believe that was in the conversation about being up on the wire and monitoring this house. And then that day had called and said that they were up on the wire and that there was a car driving north on 93 with Vermont plates, that they suspected there were drugs in that motor vehicle. But for the qualifying information that you're to establish your own reason for a stop and your own probable cause, that takes it out of your typical case of collective knowledge doctrine. The Supreme Court in Whiteley and Hensley... I'm sorry, let me be clear. You're conceding that but for the find your own probable cause for the stop if you can, but for that there was probable cause? I would not necessarily say that. I would concede for purposes of the argument that Turner, if Turner had been the individual stopping the car, had probable cause. I am not conceding that under the circumstances of this case, even if Turner had not said you need to establish your own probable cause, which I think takes it out of the applicable cases. Even if he had not said that... Okay, so we've got two arguments. One is the information Turner provided to the officer who stopped the car was inadequate as a matter of law to provide the basis for application of the collective knowledge doctrine. And then the second is because of the find your own probable cause conversation that regardless of the answer to the first question takes it out of collective knowledge. Is that correct? That's correct, Your Honor. That this case is not a vertical collective knowledge case because of the clarifying that you need to establish your own probable cause. It wasn't a clear directive. And the case law from the Supreme Court and all circuits have found vertical collective knowledge where it's a very clear directive. You are to stop this car. You are to stop this person. You are to conduct a cavity search on this person. That is not this Turner's... And it was a directive to stop him and it was telling him chin up something, your own probable cause, so he doesn't know why we're stopping him. Well, that's the cause of the problem, I believe. However... Why is that a problem? The officer has probable cause. He can arrest him. He can call up someone else and say, I just saw this guy rob the bank, stop him. And that's okay. But if the officer doesn't want the people they're surveying to know, then he says, don't tell him at the time why we're arresting him other than you make up something. So how is he in a worse position than if the officer just said arrest him for robbing the bank? There's two issues there. I think just saying arrest him, he just robbed a bank, may not be enough in the first instance. First of all, if they're not working together. So collective knowledge, the idea of collective knowledge has been applied by most circuits to say a unit working together, a DEA task force working together, such as the units in Lawrence that were monitoring the stash house had state police officers working with them specifically to stop the motor vehicles. That was their role. If that task force working together, there's a directive, stop that person. That's one thing. So I think that that's a distinction, first of all, that I don't think it's enough to just pull in a random officer. Counsel, I-93 North going through Southern New Hampshire is a very well known drug corridor. So are you saying DEA agents have to be out there along with the local cops and the small state troopers in New Hampshire in order to stop cars on this well known drug corridor after the wiretap has revealed information that is more than adequate for probable cause that the guy has drugs in his car? If they are working together as a unit of investigation, as was this case, Officer Turner testified that the typical way this task force was working was one person monitoring the wire, one or two people monitoring the wire, people monitoring the house where they believed the transactions were occurring, and then units to stop those individuals as they were leaving the house. And that's not what happened here? That's not what happened here because they did not, they went up on the wire moments before this stop happened. They had been down on the day because of the search, the delay in getting the search warrant. So they had this delay, the wire went live, there was, my client allegedly was there, or I guess it's found, he was there at the time the wire went live. They didn't have their units in place, their stop units so to speak, in place at the time. So they couldn't act quick enough, because we're talking about basically a They're monitoring these text messages, and then the guys on the ground say there's this white car here from Vermont, and they're trying to connect all their dots. They couldn't get their stop units in place in time, so that's why Officer Turner called DiChiara, who was not involved in this investigation, was not part of the DEA task force, called him and said there's a car. I still don't understand what you're saying, the defect is, are you saying the defect is telling the extraneous information, the ginned up information, as Judge Chiara puts it, and that somehow breaks the chain of probable cause, and if they had just shut up and said we have probable cause, stop this person, that would be okay? No, I think there's two, may I finish, Your Honor? It's two distinct arguments. First, this is not a vertical collective knowledge case, because it was not a clear directive, because the directive was to develop your own PC, not rely on my PC, develop your own PC, which is not the collective knowledge. But there was a reason for that, so you're saying that, I'm trying to figure out what rule you want us to adopt, you're saying that it would be impermissible for an officer who has probable cause, but doesn't want their cover to be blown, their investigation to be blown, to convey extraneous information for the purpose of stopping the person, even though the officer investigating has probable cause? Yes, essentially, I'm saying that if you're going to rely on collective knowledge, if you're going to look back after the fact and say the PC is not your PC, the individual who stopped the car, the probable cause is our PC who's working behind the scenes, but the directive to the arresting officer is you have to develop your own probable cause, but then when your probable cause fails, we're going to look back, and we're going to piece together our probable cause, that we could have had to do it if your probable cause had not failed, is not the collective knowledge doctrine. It's not what the Supreme Court intended in Whiteley and Hensley, and it's not what any circuit court of appeals has found to be collective knowledge. Okay, thank you, counsel. Thank you, counsel. At this time, would Attorney Dranzik please introduce herself on the record? Good morning. May it please the court, my name is Anna Dranzik. I represent the United States. I think to address some of the points that my colleague was making, I want to address first the issue of the directive and what directive was made here. I think that a defendant has conceded that Turner's testimony, which the district court credited, was that he told DiChiara to stop the car, and that that is the directive that is required to impute the knowledge that the DEA task force had to DiChiara in making that stop. There's nothing in the case law that I can identify that limits this directive or that precludes the DEA saying, and we'd like you to protect our investigation. In fact, there are cases in other circuits, particularly where we have essentially the same facts. The DEA is conducting a broader investigation. They reach out to a local law enforcement agent, Ibarra Sanchez, and the have the capability of making the stop, but they choose not to so they can protect the broader investigation. Let me ask you a question about that that's puzzled me. I don't think it's addressed in the briefs. When a police officer stops or arrests someone, let's take arrest first, does the officer have to tell the person why he's being arrested? I would imagine that ideally that is what would happen. Because if that's a requirement, then you get into a little trouble if the reason given is inadequate, is there's no probable cause. What significance of that is? Can you have a hidden, then fall back on a hidden reason for which there is probable cause? That seems to be what everyone is assuming here. I think, Your Honor, that you can. I think part of the issue is that we have stops that unfortunately are not supported by a probable cause and they are challenged and the courts find this stop did not have probable cause. Counsel, please, you're betting off point. I have the same question that Judge Kayotta had. Judge Thompson just gave you a hypothetical in which the officer merely stops and says, you're under arrest, doesn't give a reason, or simply says, there's probable cause, period. Okay. Now, you were asked the question whether, as a matter of law, something more has to be said, and I take it you don't know the answer to that question. Your Honor, I will say I don't know at what stage that necessarily has to be said. Obviously, ultimately, the government... It obviously has to be said in court if there is a challenge that there was no probable cause. That isn't the question before you. I think, Your Honor, the issue is that you have situations where officers get things wrong. So, in this case, well, let me back up. This is not a case in which Officer DiCiara would have said, there is probable cause, I am arresting you, that is that. He gave a reason for the stop, which was to do with the lighting of the license plate. No, it was in Spanish. No, no, no, no. I understand the reason for the stop was a hazardous traffic maneuver about going around other cars that violated local law. So, we're not even talking about the reason for the stop. What we're really talking about is going beyond that, and the reason for the search of the trunk, and the reason for the arrest. Did I remember the record correctly? I believe so, Your Honor. I don't have... So, at that point, again, do you know of a legal requirement that the person being arrested has to be told then and there what the reason is for the arrest? Your Honor, I don't know of such a legal requirement. Okay, all right. To return, I think, to the adequacy of the directive, Turner testified that he told DiCiara to stop the car. Now, to the degree to which the addition of requiring him, or requesting him to find his own probable cause, I don't think there's anything in the case law that makes that inconsistent, that precludes an officer from adding that into the situation, when really the issue here is what did the initial directing officer know? Why did DiCiara tell him what reason did he give for arresting him? One of the factors was the idea that there was, I believe, an issue with his tag light, and Judge Lynch has referenced the dangerous maneuver on the highway. To be completely honest, I would have to check the record directly to give you additional details. What reason did he give for searching the vehicle? His reason for searching the vehicle, I believe they called a dog once there was a stop, and that the dog alerted. I understood from your earlier argument that what the government would like to see here is not just the, this isn't a vertical collective knowledge case, but that the government is entitled to protect the confidentiality of its investigations, and for that reason it can say things like gin up a reason for the search. And you say that other circuits have adopted such a rule? Other circuits have found the collective knowledge doctrine to apply on those particular facts. Now the issue is that certainly... And are they in your brief? Yes, Your Honor, they are. Okay, we'll look. I wanted to follow up and say that the issue of asking a fellow officer to come up with additional probable cause and the degree to which you can protect the broader investigation, that protection will only last so long as the officer actually does find legitimate probable cause. If you have a situation as here where that officer has failed to find probable cause, obviously ultimately that investigation will be uncovered, the broader investigation will be revealed. But I think at the time of the stop, if the officer who is being directed actually does conduct and determine and find his own probable cause, then there is no issue with regard to protecting the broader investigation. But wasn't there a stipulation here that there was no independent probable cause? Yes, there is, Your Honor. There was not. So the charge didn't have probable cause? No, he did not, Your Honor. That is absolutely correct. And that is where we find ourselves here. I think that the goal of protecting the broader investigation is valid and does support saying find additional probable cause. It does not obviously support a stop where, let me back up, should that stop be insufficient, it does not allow the DEA to continue to protect the investigation. You don't mean stop, you mean search and arrest. In this case, yes, Your Honor. I will briefly address the issue of the timing that opposing counsel referenced with regard to the timing of this particular stop or the communication. By the time Turner is reviewing the text messages that are coming in on about 2.23 on the afternoon of the 15th where the defendant states he's 30 minutes out, Turner is reviewing those live. He has the opportunity to direct the agents who are in Lawrence to the appropriate location so they can surveil and see what results. And then he receives the reports from the agents at approximately 2.48 that they see the car in the vicinity, 2.52 that the car has parked across the street, 2.53 is when you have the text message from the defendant's phone saying, I'm here, essentially let me in. And DCR has said that he received the call to- All right, so Turner's got probable cause. Yes. Okay. He tells DCR to stop, but don't tell him why he's being stopped. Come up with a pretext for stopping him that everyone stipulates there was no probable cause, independent probable cause. Yes, Your Honor. So the government's position is all of Turner's knowledge or enough of Turner's knowledge was given to DCR for him to have probable cause to place him under arrest? And then once he was placed under arrest, the dog shows up, then there's probable cause to search the car? Your Honor, yes. The government's position is that Turner provided enough information to DCR to impute his probable cause to DCR for the stop. All right, to stop, make the arrest, you don't know if he has to tell him why he's being arrested? Yes, Your Honor. And does he tell him he was being arrested for traffic violations, nonetheless? Yes, Your Honor. He does not tell him he's being arrested for drug trafficking in Lawrence. I thought the government's position was there was enough probable cause from what Turner conveyed, regardless of the dog sniff, to have searched the trunk of the car. Yes, Your Honor. And I'm sorry if I was unclear. That is the government's position. You stated exactly the opposite. Then I apologize, Your Honor. That was a misspeak. If there are no further questions, Your Honors, we ask this court to affirm the district court's denial. Okay, thank you. That concludes argument in this case.